**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH E. OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 16-cv-312** |
| **v.** | ) | |
| | ) | **Judge Robert M. Dow, Jr.** |
| **THOMAS J. DART, individually and in his** | ) | |
| **official capacity as Cook County Sheriff,** | ) | |
| **THE COUNTY OF COOK, ILLINOIS,** | ) | |
| **JEFFREY RANDLE, DARRELL BOLTON,** | ) | |
| **ABDON GARCIA, EDDIE GONZALEZ,** | ) | |
| **JOHN BENNETT, ANNETTE L. DUNN,** | ) | |
| **RODOLFO CAMACHO, JAMIE PHILLIPS,** | ) | |
| **WILLIAM M. BEHENNA, JR., JACQUELINE** | ) | |
| **PULLUMS, PHILLIP JACKSON,** | ) | |
| **ANTHONY SEVENING, GINA CAPUTO,** | ) | |
| **AND GARY ANIKA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIRD AMENDED COMPLAINT**

Plaintiff, Joseph E. Owens, by his attorneys, Joseph R. Jeffery and Sara G. Janes, for his

Third Amended Complaint against the defendants, THOMAS J. DART, individually and in his

official capacity as Cook County Sheriff, THE COUNTY OF COOK, ILLINOIS, JEFFREY

RANDLE, DARRELL BOLTON, ABDON GARCIA, EDDIE GONZALEZ, JOHN BENNETT,

RODOLFO CAMACHO, WILLIAM M. BEHENNA, JR., JACQUELINE PULLUMS, PHILLIP

JACKSON, ANTHONY SEVENING, JAMIE PHILLIPS, ANNETTE L. DUNN, GINA

CAPUTO, AND GARY ANIKA states as follows:

**INTRODUCTION**

1.      Plaintiff, Joseph E. Owens, is college graduate and veteran of the United States

Army who served in the Vietnam War.

2.     In November 2015, Plaintiff suffered from bipolar disorder, post-traumatic stress disorder, anxiety, hypertension, and renal insufficiency, which conditions he managed well with prescription medications. Management of Plaintiff's renal insufficiency further required him to undergo kidney dialysis three times per week in 2015.

3.     Plaintiff was arrested on November 28, 2015 for allegedly stealing a watch valued at approximately $30.00 from a retail store. Plaintiff did not have any of his medications in his possession at the time of his arrest. The day after his arrest, he was taken to the Cook County Jail where he was kept in a one-person cell for several days and nights until the charges against him were dismissed on December 4, 2015.

4.     During his confinement, Plaintiff requested medical attention for his chronic mental and physical conditions, and he pleaded to be moved from his one-person cell as it aggravated the effects of his bipolar disorder and caused him to attempt suicide by repeatedly banging his head hard against the bars of his jail cell.

5.     As set forth more fully below, the defendants deprived Mr. Owens of his right to liberty by placing and keeping him in a one-person cell when it was detrimental to his mental and physical health, and they deprived him of rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution by repeatedly acting with deliberate and conscious indifference to Mr. Owens' serious medical and mental conditions. This action also asserts a claim seeking damages under Illinois law for intentional infliction of emotional distress.

6.     This is a civil action seeking damages from the defendants, Thomas J. Dart, individually and in his official capacity as Cook County Sheriff, Cook County, Illinois, Jeffrey Randle, Darrell Bolton, Abdon Garcia, Eddie Gonzalez, John Bennett, Rodolfo Camacho, William

M. Behenna, Jr., Jacqueline Pullums, Phillip Jackson, Anthony Sevening, Jamie Phillips, Annette L. Dunn, Gina Caputo, And Gary Anika for committing acts under color of state law that deprived Mr. Owens of rights secured to him by the United States Constitution and Illinois law.

<u>**JURISDICTION AND VENUE**</u>

7.     Plaintiff asserts claims arising under 42 U.S.C. § 1983. This Court has original jurisdiction over those claims pursuant to 28 U.S.C. § 1331. Plaintiff also asserts claims arising under Illinois law, which claims form part of the same case or controversy as the federal question claims over which this Court has original jurisdiction. Accordingly, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

8.     Venue is proper under 28 U.S.C. § 1391(b). Defendants are subject to personal jurisdiction in this judicial district because all individual defendants are residents of the State of Illinois and Cook County, Illinois is located in Illinois. Furthermore, the events giving rise to the claims herein occurred in this judicial district.

<u>**PARTIES**</u>

9.     Plaintiff has suffered from bipolar disorder since approximately 1978 and from renal insufficiency since approximately 2007.

10.     Defendant, Thomas J. Dart ("Dart"), has served as the Cook County Sheriff since 2007. The Cook County Sheriff is an independently-elected constitutional officer not under the authority of the Cook County Board of Commissioners. In his capacity as Cook County Sheriff, Dart has sole responsibility for the Cook County Department of Corrections ("CCDOC"), which administers all corrections and security functions at the Cook County Jail.

11.     Defendant, The County of Cook, Illinois established the Cook County Health and Hospitals Systems ("CCHHS") as an agency of the Cook County government. Cermak Health

Services of Cook County ("Cermak") is a division of CCHHS. Pursuant to an inter-agency agreement between CCHHS and the Cook County Sheriff, Cermak and CCDOC must participate in a coordinated approach to the delivery of health care to detainees at the Cook County Jail and to develop mutually acceptable policies and procedures to accommodate both security requirements and the inmates' clinical needs. Cook County is liable for the acts and omissions of Cermak.

12.     Plaintiff sues defendant Jeffrey Randle ("Randle") in his individual and official capacity. Randle is a CCDOC corrections officer who participated in Plaintiff's booking at the Cook County Jail in the late morning or early afternoon of November 29, 2015.

13.     Plaintiff sues defendant Darrell Bolton ("Bolton") in his individual and official capacities. Bolton is a CCDOC corrections officer who, between 11:00 p.m. on November 29, 2015, and 7:00 a.m. on November 30, 2015, transported Plaintiff to a one-person cell within the Jail.

14.     Plaintiff sues defendants Abdon Garcia ("Garcia"), Eddie Gonzalez ("Gonzalez"), John Bennett ("Bennett"), and Rodolfo Camacho ("Camacho") in their individual and official capacities. Garcia, Gonzalez, Bennett, and Camacho are corrections officers with the CCDOC who were on duty and responsible for overseeing the cell block of the Cook County Jail in which Plaintiff was confined between 11:00 p.m. on November 29, 2015, and 7:00 a.m. on December 1, 2015.

15.     Plaintiff sues defendants William M. Behenna, Jr. ("Behenna"), Jacqueline Pullums ("Pullums"), Phillip Jackson ("Jackson"), Anthony Sevening ("Sevening"), Jamie Phillips ("Phillips"), and Annette L. Dunn ("Dunn") in their individual and official capacities. Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn are corrections officers with the CCDOC who

4

were on duty and responsible for supervising Garcia, Gonzalez, Bennett, and Camacho while they oversaw the cell block of the Cook County Jail in which Plaintiff was confined between 11:00 p.m. on November 29, 2015, and 7:00 a.m. on December 1, 2015.

16.    Plaintiff sues defendants Gina Caputo ("Caputo") and Gary Anika ("Anika"), who were employees of CCHHS and/or Cermak in November 2015, in their individual and official capacities. Caputo and Anika each attended to Plaintiff during his confinement at the Jail.

## PLAINTIFF'S ARREST AND INCARCERATION

17.    In November 2015 and prior thereto, Plaintiff's chronic physical and mental conditions prevented Plaintiff from engaging in substantially gainful activity. The Social Security Administration determined Plaintiff to be disabled in 1984.

18.    Plaintiff was booked at the Cook County Jail on the morning of November 29, 2015, by Randle. Plaintiff informed Randle that he suffered from bipolar disorder and renal insufficiency, that he required medication and regular dialysis treatments in order to manage those conditions, and that he did not have any of his prescribed medications in his possession.

19.    Cermak conducted an intake screening of Plaintiff the evening of November 29, 2015. Plaintiff informed employees of CCHHS and/or Cermak of the following:

- He had been hospitalized three months earlier for behavioral reasons;

- He had been receiving mental health counseling and psychiatric care;

- He was taking medications for his mental disorders;

- He became irritable and unstable if he did not receive his medications;

- He had a history of attempted suicide, including an attempt earlier in 2015 when he became depressed;

- He felt nervous, hopeless, restless, depressed all of the time.

20.    Following his intake screening, Plaintiff was taken to a one-person jail cell by

Bolton late in the evening of November 29, 2015 or early in the morning of November 30, 2015. When Plaintiff realized he was being taken to a one-person cell, he informed Bolton that he had bipolar disorder and renal insufficiency that required attention as he was not urinating. He said to Bolton, "Man, I'm supposed to go to Cermak." Bolton responded by telling Plaintiff "get your ass in that cell!" Plaintiff complied with Bolton's command and spent the first of several nights in a one-person cell.

21.     Feelings of despondency and severe anxiety began to set in after Plaintiff was placed in a one-person cell. Plaintiff had not received any of his prescribed medications, was not urinating, and he worried he would have a panic attack.

22.     Defendant Gina Caputo, an employee of CCHHS and/or Cermak, saw Plaintiff on November 30, 2015 after he asserted in a written form, "I want to kill myself." According to Caputo, Plaintiff was "loud, demanding, and report[ed] he becomes irritable without his medications." When Caputo asked Plaintiff about his suicidal assertion, Plaintiff explained that getting his prescribed medications and seeing a psychiatrist would alleviate his suicidal impulses. Caputo disregarded Plaintiff's medical history, his pleas for medication and psychiatric care, and his risk of suicide, telling him "that he needs to be patient," and recording in Plaintiff's records that she did not believe Plaintiff's confinement alone in a one-person cell was inappropriate.

23.     A few hours later on November 30, 2015, defendant Gary Anika, who was also an employee of CCHHS and/or Cermak, saw Plaintiff after a referral "due to 'suicidal thoughts.'" Anika recorded that Plaintiff told him "in a loud tone while rocking back and forth" and with "limited eye contact" that "I need my medication, I'm decompensating and then they got me in SEG over there in the area by myself. I like to be around people." Plaintiff further reported that he buried his son a few days prior and had only gotten 2-3 hours of sleep since his incarceration.

Rather than recommending Plaintiff be moved from his one-person cell, or otherwise signaling that Plaintiff's confinement was inappropriate under the circumstances, Anika recorded that Plaintiff would be returned to his cell "with a routine follow up."

24.     At various times between November 30, 2015, and 7:16 a.m. on December 1, 2015, defendants Garcia, Gonzalez, Bennett, and Camacho oversaw Plaintiff's cell block. At one point during that time period, Plaintiff yelled to the officer on duty, pleading to let him go to the Jail's infirmary or to a hospital, insisting he should not be alone in a one-person cell. The officer on duty ignored Plaintiff's pleas, except to laugh and once to yell back to Plaintiff, "Fuck you!" On information and belief, Garcia, Gonzalez, Bennett, or Camacho was the officer who laughed and yelled back to Plaintiff.

25.     After several hours' worth of repeated requests for medical attention and to be relocated, Plaintiff yelled to the officer on duty and requested a "white shirt," meaning he wanted to speak to a supervising officer.

26.     At various times between November 30, 2015, and 7:16 a.m. on December 1, 2015, defendants Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn were the supervising officers for Plaintiff's cell block. In response to Plaintiff's request, one of those supervising officers came to Plaintiff's cell where Plaintiff again explained his medical conditions and his need for medication and treatment, and he begged to be moved out of his one-person cell. When the supervising officer refused, Plaintiff requested a grievance form. On information and belief, Behenna, Pullums, Jackson, Sevening, Phillips, or Dunn was the supervising officer who came to Plaintiff's cell and from whom Plaintiff requested a grievance form.

27.     Instead of providing a grievance form, the supervising officer gave Plaintiff a Health Service Request Form ("HSRF"). Plaintiff completed the HSRF and returned it to the

supervising officer.

28.     Plaintiff completed the HSRF, writing as follows:

- "I am NOT getting my prescribed medication"

- "I can't sleep[,] paranoid"

- "Racing thoughts and high anxiety"

- "No sleep and voices"

- "I need to see psychiatrist earlier than scheduled"

29.     Because Plaintiff had requested a grievance form, Plaintiff understood that completing the HSRF constituted the filing of a grievance.

30.     At some point on November 30, 2015, Plaintiff's severe anxiety had turned to severe depression and Plaintiff became paranoid. He did not understand why he was being held in segregation and started to believe he was placed there because CCDOC officers planned to kill him. Plaintiff became suicidal. He began banging his head hard against the bars of his one-person cell repeatedly in an attempt to kill himself.

31.     While Plaintiff was alone in his one-person cell and repeatedly banging his head against his cell bars, the CCDOC officer overseeing Plaintiff's cell block walked by, observed Plaintiff's actions, and laughed saying, "You're going to have a fucked-up head!" On information and belief, Garcia, Gonzalez, Bennett, or Camacho was the officer who laughed and spoke to Plaintiff.

32.     Plaintiff pleaded with the officer for medical and mental health attention and to be moved out of his one-person cell. When the officer refused, Plaintiff began banging his head hard against his cell bars again. Plaintiff banged his head on the bars until sometime in the early morning of December 1, 2015. He does not remember stopping or falling asleep but woke up later in the

day with a large contusion on his head.

33. The next few days of Plaintiff's confinement played out the same way. Plaintiff pleaded with the CCDOC officers on duty at the time for medical care and to be moved out of his one-person cell to no avail. Plaintiff would attempt suicide every day by repeatedly striking his head hard against his cell bars for extended periods of time. The contusion on Plaintiff's head grew larger and was obvious to anyone who saw Plaintiff. Nevertheless, the CCDOC officers and supervisors overseeing Plaintiff's cell block never intervened to try to prevent Plaintiff's suicide attempts or to get him the medical and mental health attention he required.

34. During the last few days of his confinement, Plaintiff submitted additional HSRFs believing them to be grievance forms.

35. Without access to his prescription medication during his confinement, the symptoms of Plaintiff's bipolar disorder grew worse and his paranoia, anxiety, and depression deepened. The symptoms of Plaintiff's renal deficiency similarly progressed in the absence of the dialysis and medications he needed to manage that condition. During that time, Plaintiff was not urinating regularly, his ankles swelled, and he experienced abdominal pain that was excruciating at times.

36. The charges against Plaintiff were dismissed on December 4, 2015 and he was discharged from the Cook County Jail.

37. Upon his release, Plaintiff immediately sought medical attention. His physician diagnosed him with a concussion and discovered that Plaintiff's kidneys had begun to shut down due to an extremely high creatinine count.

38. Plaintiff's physician admitted him to the hospital for treatment, where Plaintiff remained for 4-5 days. During that time, Plaintiff began receiving dialysis treatments again to

address his dangerously high creatinine levels and began taking his prescribed medications again.

39.     Plaintiff still suffers from the side effects of his concussion. Following Plaintiff's release from the Cook County Jail, he experiences recurring severe headaches, episodic dizziness and loss of balance, he is sensitive to certain lights and experiences severe emotional distress.

40.     Plaintiff filed the Complaint that initiated this action on January 11, 2016.

## THE AGREED ORDER GOVERNING DEFENDANTS' CONDUCT DURING PLAINTIFF'S INCARCERATION

41.     The United States Department of Justice, Civil Rights Division, and the United States Attorney for the Northern District of Illinois sent a letter in 2008 to Dart, in his capacity as Cook County Sheriff, and to the President of the Cook County Board ("2008 Letter"). The 2008 Letter described the government's investigation into conditions at the Cook County Jail, which investigation found, *inter alia*, that the Cook County Jail was not providing adequate medical and mental health care, including suicide prevention, to inmates.

42.     Citing the findings in the 2008 Letter, the United States of America filed suit against Cook County, Illinois, Defendant Dart in his official capacity, Todd H. Stroger, Cook County Board President, in his official capacity, and the Cook County Board of Commissioners in their official capacities. The government alleged the defendants exhibited deliberate indifference to the health and safety of Cook County Jail inmates in violation of the rights, privileges, or immunities secured or protected by the Constitution of the United States (the "Government's Lawsuit").

43.     On May 13, 2010, the parties to the Government's Lawsuit entered into an Agreed Order that required CCDOC and Cermak, to take certain steps to remediate the violations identified in the 2008 Letter.

44.     Pursuant to the Agreed Order, Cermak was required to, *inter alia*:

- develop and implement, in accordance with generally accepted professional

10

standards, medical care policies, procedures, and practices to address and guide all medical care and services at the Jail;

- ensure clinically appropriate and timely treatment for inmates whose assessments reveal serious mental illness or serious mental health needs;

- provide 24-hour/7-day psychiatric coverage to meet an inmate's serious mental health needs;

- work with CCDOC to develop and maintain a curriculum for initial and periodic training of correctional officers on recognition and timely referral of inmates with medical urgencies.

45. The Agreed Order also required the CCDOC to, *inter alia*:

- provide initial and periodic training to officers who work with inmates to recognize signs of mental illness and suicide risk and how to respond to and monitor those inmates appropriately;

- maintain a policy that correctional officers who supervise newly arrived inmates must physically observe the conduct and appearance of those inmates to determine whether they have a need for medical or mental health attention;

- consult with Cermak to determine whether, in the case of a mentally-ill inmate, confinement in a one-person cell was appropriate or whether it would be more appropriate to place the inmate in an alternative confinement; and

- hire and train a sufficient number of qualified correctional officers and other staff to provide inmates requiring medical and mental health treatment access to care.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983
## DEFENDANTS DEPRIVED PLAINTIFF OF HIS CONSTITUTIONALLY PROTECTED RIGHT TO LIBERTY BY PLACING HIM BY HIMSELF IN A ONE PERSON CELL WITHOUT DUE PROCESS OF LAW

46. Plaintiff incorporates by reference the allegations of Paragraphs 1 to 45 as and for Paragraph 46 of this Count I.

47. As a pretrial detainee with several mental and physical disorders, Plaintiff had a liberty interest in not being placed in a one-person cell because it was detrimental to his mental and physical health.

48. The Agreed Order established the due process Plaintiff was entitled to receive to ensure the defendants did not violate his liberty interest in not being placed in a one-person cell because of the effects it would have on his mental and physical health.

49. CCDOC was aware of Plaintiff's chronic mental and physical illnesses because he specifically informed CCDOC officers of those conditions on multiple occasions, including in the HSRFs he submitted.

50. Throughout Plaintiff's confinement, Cermak disregarded its obligation to recommend that Plaintiff's continued confinement alone in a one-person cell was inappropriate in light of his physical and mental disorders.

51. CCDOC disregarded its obligation to consult with Cermak during Plaintiff's confinement to determine whether Plaintiff's continued placement alone in a one-person cell was inappropriate in light of his physical and mental disorders. Instead, as punishment for Plaintiff's having filed grievances about the conditions of his incarceration, CCDOC did not consult with Cermak and kept Plaintiff by himself in a one-person cell.

52. Garcia, Gonzalez, Bennett, and Camacho each had a responsibility to contact a supervisor or Cermak directly when it became clear Plaintiff required attention for his physical and mental health issues.

53. On information and belief, Garcia, Gonzalez, Bennett, and Camacho had become frustrated with Plaintiff's repeated pleas to be moved from his cell, as evidenced by the fact that one of them laughed and told Plaintiff to "Fuck off!" when he requested medical attention and to be transferred out of his one-person cell, and another of them mocked Plaintiff as he repeatedly banged his head against his cell bars in an attempt to kill himself.

54. On information and belief, Garcia, Gonzalez, Bennett, Camacho, Behenna,

Pullums, Jackson, Sevening, Phillips, and Dunn resented Plaintiff for having filed multiple grievances about the conditions of his confinement. To punish Plaintiff, they deliberately did not take steps necessary to effectuate Plaintiff's transfer out of his one-person cell despite Plaintiff's statements that he suffered from mental illness and obvious signs that Plaintiff suffered from mental illnesses, was a suicide risk, and that continued confinement in his one-person cell was detrimental to his health. Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn, thereby, deprived Plaintiff of his liberty interest in not being confined in segregation.

55.    Dart, both in his individual and official capacities, knew or consented to the deprivation of Plaintiff's liberty interest without due process. The 2008 Letter and the 2010 Agreed Order put Dart on notice that the staffing and training of officers capable of recognizing and addressing inmates' mental health needs at the Cook County Jail were deficient and widespread.

56.    The consequences of such deficiencies, Dart knew, was that inmates with serious mental illnesses would not be identified and, as a result, might be placed or kept by themselves in a one-person cell when their health needs demanded they be moved elsewhere.

57.    Individuals monitoring compliance with the Agreed Order confirmed within a few months of Plaintiff's incarceration, that Dart still had not resolved those staffing and training deficiencies at the Cook County Jail. The fact that the issues identified in the 2008 Letter continued seven years later, which was five years after entry of the Agreed Order, and that so many CCDOC officers acted in a manner to deprive Plaintiff of his liberty interest without due process demonstrates that Dart, in his individual and official capacities, was deliberately indifferent to the staffing and training deficiencies at the Cook County Jail and to the consequences of the same. As a result, Dart deprived Plaintiff of his liberty interest in not being placed in a one-person cell.

58.     Cook County knew or consented to the deprivation of Plaintiff's liberty interest without due process. The 2008 Letter and the 2010 Agreed Order put Cook County on notice of widespread deficiencies in the process for evaluating inmates' medical and mental health needs, including the appropriateness of housing for mentally ill inmates, of providing follow up care and assessments as indicated by such evaluations, and that Cermak had failed to hire adequate numbers of staff to provide those services.

59.     The consequences of failing to develop procedures to make those evaluations and to hire staff in numbers sufficient to provide those services, Cook County knew, was that Cermak would fail to identify inmates that had a mental illness and who required follow up care for that illness, Cermak would not know to consult with CCDOC about the appropriateness of placing and keeping such inmates by themselves in one-person cells, and mentally-ill inmates would be placed or kept alone in one-person cells when it was detrimental to their mental and physical health.

60.     Individuals monitoring compliance with the Agreed Order confirmed within a few months of Plaintiff's incarceration that Cermak had not resolved staffing deficiencies at the Cook County Jail. The fact that those deficiencies continued seven years after the 2008 Letter and five years after entry of the Agreed Order demonstrates that the deficiencies continued to be widespread and that Cook County was deliberately indifferent to those concerns and the consequences of the same. Cook County, by failing to ensure Cermak developed procedures to properly evaluate the mental health and medical needs of inmates, and to sufficiently staff the Cook County Jail, deprived Plaintiff of his liberty interest without due process of law.

61.     Plaintiff is entitled to recover damages from the defendants to compensate him for the continuing physical and severe emotional distress their actions caused him.

62.     Plaintiff is also entitled to recover punitive damages to punish defendants for their

14

willful and malicious conduct and to deter others from similar behavior.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983
## DEFENDANTS INTENTIONALLY DENIED PLAINTIFF ACCESS TO THE MEDICAL AND MENTAL HEALTH CARE NECESSARY TO TREAT HIS DIAGNOSED PHYSICAL AND MENTAL HEALTH CONDITIONS

63.     Plaintiff incorporates by reference the allegations of Paragraphs 1 to 45 as and for Paragraph 63 of this Count II.

64.     The United States Constitution afforded Plaintiff the right to access adequate care on a timely basis to address his serious medical and mental health needs.

65.     Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn refused, unreasonably delayed, and intentionally interfered with Plaintiff's efforts to obtain adequate medical care to address his serious medical and mental health needs.

66.     Plaintiff's renal insufficiency was an objectively serious medical condition that had been diagnosed by Plaintiff's physicians and for which Plaintiff, prior to his incarceration, had been taking medication daily and receiving regular dialysis treatments.

67.     Plaintiff's renal insufficiency significantly affected his daily activities while incarcerated in that he ceased urinating on a regular basis. That fact, combined with Plaintiff's statements to the CCDOC officer defendants, about his condition, the medications and treatments he required to manage the condition, that he was not urinating regularly, and that his ankles were swollen were conditions that a reasonable doctor or patient would find important and worthy of treatment.

68.     Plaintiff's bipolar disorder was an objectively serious mental-health condition that had been diagnosed by Plaintiff's physicians and for which Plaintiff, prior to his incarceration, had been taking medication, sometimes multiple times per day.

69.     Prior to his actual suicide attempts, the seriousness of Plaintiff's risk of suicide

would have been apparent to a lay person who was aware of Plaintiff's statements to CCDOC officers and Cermak personnel about his bipolar disorder and his need for medication to manage that condition.

70.     Prior to his actual suicide attempts, the seriousness of Plaintiff's risk of suicide would have been apparent to a lay person who observed Plaintiff's demeanor while in his one-person cell.

71.     Prior to his actual suicide attempts, the seriousness of Plaintiff's risk of suicide would have been apparent to a lay person who was aware of Plaintiff's pleas for medical and mental health treatment and to be moved from segregation.

72.     The seriousness of Plaintiff's continuing risk of suicide would have been apparent to a lay person aware of Plaintiff's daily attempts to kill himself by repeatedly banging his head hard against the bars of his jail cell.

73.     Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn deliberately disregarded and were indifferent to Plaintiff's medical and mental health conditions and his requests for treatment.

74.     To the extent Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn disregarded and were indifferent to Plaintiff's condition and his requests for treatment because they did not recognize Plaintiff's need for medical and mental-health care, Dart, in his individual and official capacities, was deliberately indifferent to the consequences of failing to work with Cermak to develop and maintain a curriculum for initial and periodic training for CCDOC officers to recognize and timely refer inmates with medical and mental health conditions for treatment, and to adequately train those officers on those issues. The 2008 Letter and the 2010 Agreed Order put Dart on notice that the training of officers capable of

recognizing and addressing inmates' medical and mental health needs at the Cook County Jail were deficient and widespread.

75.     The consequences of such deficiencies, Dart knew, was that inmates with serious mental illnesses would not be identified and, as a result, would not receive the medical and mental-health care they required, which increased the risk of suicide and that the inmates' chronic illnesses would progress.

76.     The fact that the training issues identified in the 2008 Letter continued seven years later, which was five years after entry of the Agreed Order, and that so many CCDOC officers were deliberately indifferent to Plaintiff's medical and mental health needs demonstrates that Dart, in his individual and official capacities, was deliberately indifferent to those concerns and the consequences of the same. As a result, Dart denied Plaintiff access to the medical and mental health care necessary to treat his diagnosed physical and mental conditions.

77.     To the extent Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn disregarded and were indifferent to Plaintiff's condition and his requests for treatment because they did not recognize Plaintiff's need for medical and mental-health care, Cook County was deliberately indifferent to the consequences of Cermak's failure to work with CCDOC to develop and maintain a curriculum for initial and periodic training for CCDOC officers to recognize and timely refer inmates with medical and mental health conditions for treatment. The 2008 Letter and the 2010 Agreed Order put Cook County on notice that the training of officers capable of recognizing and addressing inmates' medical and mental health needs at the Cook County Jail were deficient and widespread.

78.     The consequences of such deficiencies, Cook County knew, was that inmates with serious mental illnesses would not be identified and, as a result, would not receive the medical and

mental-health care they required, which increased the risk of suicide and that the inmates' chronic illnesses would progress.

79.     The fact that the training issues identified in the 2008 Letter continued seven years later, which was five years after entry of the Agreed Order, demonstrates that Cook County was deliberately indifferent to those concerns and the consequences of the same. As a result, Cook County denied Plaintiff access to the medical and mental health care necessary to treat his diagnosed physical and mental conditions.

80.     Plaintiff is entitled to recover damages from the defendants to compensate him for the continuing physical and severe emotional distress they caused him.

81.     Plaintiff is also entitled to recover punitive damages to punish defendants for their willful and malicious conduct and to deter others from similar behavior.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

82.     Plaintiff incorporates by reference the allegations of Paragraphs 1 to 81 as and for Paragraph 82 of this Count III.

83.     The failure of Dart, in his individual and official capacities, and Cook County to address and remedy the issues identified in the 2008 Letter and the Agreed Order reflects their willful and utter indifference to or conscious disregard for the safety of Plaintiff during his incarceration at the Cook County Jail.

84.     The acts and omissions of Garcia, Gonzalez, Bennett, Camacho, Behenna, Pullums, Jackson, Sevening, Phillips, and Dunn reflects their utter indifference to or conscious disregard for the safety of Plaintiff during his incarceration at the Cook County Jail.

85.     As a result of the conduct of each of the defendants, Plaintiff experienced (and continues to experience) severe emotional distress including, anxiety, claustrophobia,

hypertension, and post-traumatic stress that manifests itself as recurring vivid nightmares, flashbacks, and panic attacks, he avoids situations involving the police because he fears they are coming to get him, he is constantly hyper-aware and on guard, and he has feelings of jitteriness, difficulty sleeping, difficulty concentrating, and is easily startled by noise or surprise.

86.     Plaintiff is entitled to recover damages from the defendants to compensate him for the severe emotional distress they caused him.

**WHEREFORE**, Plaintiff, Joseph E. Owens, respectfully requests that this Court enter judgment in their favor and grant him the following relief:

a) Monetary damages to be paid by defendants to Plaintiff in an amount sufficient to compensate Plaintiff for defendants having deprived him of his constitutionally protected right to liberty by placing and keeping him alone in a one-person cell without due process;

b) Punitive damages in an amount sufficient to punish defendants for their willful and malicious deprivation of Plaintiff's constitutionally protected right to liberty, and to deter others from similar behavior;

c) Monetary damages to be paid to Plaintiff in an amount sufficient to compensate Plaintiff for defendants having intentionally and without due process denied him access to the medical and mental health care necessary to treat his chronic physical and mental conditions;

d) Punitive damages in an amount sufficient to punish defendants for intentionally and without due process denying Plaintiff access to the medical and mental health care necessary to treat his chronic physical and mental conditions, and to deter others from similar behavior;

e) Monetary damages to be paid to Plaintiff in an amount sufficient to compensate him for the severe emotional distress the defendants' acts and omissions caused him;

f) Such other relief as this Court deems just.

**JOSEPH E. OWENS**

  /s/     Joseph R. Jeffery
                One of the attorneys for Plaintiff

Joseph R. Jeffery
Sara G. Janes
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, Illinois 60606
(312) 281-3600
(312) 281-3678 (fax)
jjeffery@cmn-law.com
sjanes@cmn-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on **November 28, 2017** I electronically filed the foregoing Third Amended Complaint, with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system which sent notification of such filing to the following CM/ECF registered participants:

Oscar Stephane Kpota, Esq.
Cook County State's Attorney's Office
50 West Washington Street
Chicago, IL 60602
oscar.kpota@cookcountyil.gov

Anthony E. Zecchin, Esq.
Cook County State's Attorney's Office
500 Daley Center
50 West Washington Street
Chicago, IL 60602
anthony.zecchin@cookcountyil.gov

Patrick F. Russell, Esq.
GoodSmith Gregg & Unruh LLP
150 South Wacker Drive
Suite 3150
Chicago, IL 60606
prussell@ggulaw.com

/s/ Joseph R. Jeffery
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, Illinois  60606
(312) 281-3600
(312) 281-3678 (fax)
jjeffery@cmn-law.com